[No. 11148–5–I.   Division One.   May 9, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD
BEN–NETH, *Appellant.*

*Jonathan Cole* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Larry E. McKeeman, Deputy,* for respondent.

RINGOLD, J.—The defendant, Richard Ben–Neth, appeals his conviction by a jury of six counts of unlawful issuance of checks, RCW 9A.56.060. He challenges the admissibility of computer–generated records, denial of his motion to sever charges and the sufficiency of the evidence to convict. We hold that the trial court ruled properly on each of these issues and affirm.

On March 18, 1981 Ben–Neth opened a checking account with Pacific Bank[1] (the bank), depositing $150. On March 25 the bank informed Ben–Neth that his account was overdrawn, and he deposited enough to cover the overdrafts. Over the next month, Ben–Neth made two additional deposits, and had three checks returned for insufficient funds. The bank sent notices for each dishonored check, and Ben–Neth was contacted numerous times by creditors regarding the NSF checks.

On April 28 Ben–Neth wrote two checks to Western Airlines which were returned for insufficient funds. Western Airlines contacted him three times about these dishonored checks.

On May 27 the bank deposited $117.73 to cover overdrafts and closed Ben–Neth's account. He was sent a statement indicating his zero balance and debt to the bank of $117.73, but may not have been notified that his account was closed. On May 28 Ben–Neth wrote a $31.17 check to University Chevrolet which was returned.

Ben–Neth continued to use the closed account. On June 15 he wrote a $250 check to Bar Review Associates of Washington. On June 19 and again on June 27 he wrote checks for $120 to his friend's wife, Cathy Chapman. Ben–Neth wrote a $100 check on June 20 and a $200 check on

---

[1]Pacific Bank is now First Interstate Bank.

June 21 to Marjorie Wright, his employer's secretary (count 5). All the checks were dishonored.

Ben–Neth was charged with two felony and four misdemeanor counts of unlawful issuance of checks. The court denied his pretrial motion to sever the counts, reasoning that they were of the same character and evidence of one count and would be admissible to prove the other counts. Over his objection the trial court admitted computerized bank records pertaining to Ben–Neth's account. Ben–Neth was convicted on all six counts and his probation was revoked. His appeal from the judgment and probation revocation were consolidated.

### COMPUTERIZED RECORDS

Ben–Neth first contends that the trial court erred in admitting the bank's computer records of his account transactions.[2] Computer–generated evidence is hearsay but may be admitted as a business record provided a proper foundation is laid under RCW 5.45.020, which provides:

> Business records as evidence. A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

---

[2]Ben–Neth does not contend that the computer records of his account are inaccurate. He argues in his brief that the bank officials who testified "did not supervise tellers who make the account records" . . . or "supervise copying of the records [and] had no idea of the responsibilities of the persons who actually copied bank records at the computer center."

Whether business records are stored in a computer or in a traditional fashion the likelihood of and nature of possible error are the same. These include arithmetic error, incorrect posting of charges, credits, or debits, entry of information onto the wrong account, and numerous other potential mistakes caused by human fallibility or by mechanical or electronic failure. Given the complexity of modern institutions one cannot expect routine recordkeeping to be completely error free. Where actual error is suspected the challenge should be to the accuracy of the business record, not to its admissibility.

If the statutory requisites are met, computerized records are treated the same as any other business records. *Seattle v. Heath,* 10 Wn. App. 949, 520 P.2d 1392 (1974).

Ben–Neth challenges the qualifications of the two bank officials as proper foundation witnesses. The statute does not require examination of the person who actually made the record. *Cantrill v. American Mail Line, Ltd.,* 42 Wn.2d 590, 257 P.2d 179 (1953). Testimony by one who has custody of the record as a regular part of his work or has supervision of ifs creation ("other qualified witness" under the statute) will suffice. *Cantrill.* The rule is disjunctive, not conjunctive. *Cf. State v. Smith,* 16 Wn. App. 425, 558 P.2d 265 (1976), *review denied,* 88 Wn.2d 1011 (1977) (misinterpreting *Cantrill* as requiring testimony by both the custodian and supervisor). Admissibility hinges upon the opinion of the trial court that "the sources of information, method and time of preparation were such as to justify its admission." RCW 5.45.020; 5A K. Tegland, Wash. Prac. § 372, at 240 (2d ed. 1982). A trial court's ruling admitting or excluding such records is given considerable weight and will not be reversed absent a manifest abuse of discretion. *State v. Kreck,* 86 Wn.2d 112, 542 P.2d 782 (1975); *Cantrill.*

Reviewing courts have broadly interpreted the statutory terms "custodian" and "other qualified witness." In *State v. Smith,* 55 Wn.2d 482, 348 P.2d 417 (1960), the court held that the owner of a chain of clothing stores provided adequate foundation testimony for the introduction of business records of a branch store because, in a general sense, all the chain's business records were prepared under the owner's general supervision. In *Cantrill* the court ruled that a supervising physician and a medical records librarian were proper foundation witnesses for the introduction of the clinic's medical records. In both *Kreck* and *State v. Rutherford,* 66 Wn.2d 851, 405 P.2d 719 (1965), the supervisor of the person who conducted tests was allowed to produce the results as business records.

Washington courts have taken a similar approach to

foundation testimony in cases dealing with computer–generated business records. In *Heath* the trial court admitted teletype printed material from a teletype printer connected to a central computer as a business record. Foundation testimony was furnished by an assistant director of the Traffic Violations Bureau of the Seattle Municipal Court, although the computer was located in Olympia. The assistant director identified two exhibits as abstracts of driving records stored in the computer, described how the records are retrieved, and testified that a clerk under his supervision had obtained the records for him. He was custodian of the printouts after they came from the teletype but not the custodian for the entire department.

Two cases concerning computerized bank records are instructive. In *State v. Smith,* 16 Wn. App. 425, 558 P.2d 265 (1976), the trial court admitted an exhibit prepared by a bank employee from computer printouts. A bank vice–president and not the employee furnished the foundation testimony. The vice–president was considered to have supervised the preparation and recordation of all the bank's records, and therefore to be a qualified foundation witness. In *State v. Kane,* 23 Wn. App. 107, 594 P.2d 1357 (1979), a bank branch officer who had prepared a trial exhibit from computer printouts of account records was considered to be their custodian and therefore a qualified foundation witness. *See also* Annot., 7 A.L.R.4th 8 (1981) and cases cited therein.

Here the records of Ben–Neth's account were produced by the supervisor of the customer service department of that branch office and by its operations officer. The customer service supervisor had opened Ben–Neth's account, and testified to being familiar with the bank's recordkeeping procedures. He was not a records custodian or supervisor of recordkeeping, but was able to describe the method for retrieving monthly account statements from the computer. Although the court found that the customer service supervisor was a qualified foundation witness, his superior also testified. As operations officer she supervised record-

keeping at that branch but did not supervise and was not familiar with procedures at the bank's central computer center, located elsewhere. Neither she nor the customer service supervisor had been to the computer center.

Ben–Neth contends that neither of the bank officials was a proper foundation witness because neither created or supervised creation of the computer records, understood how the records were assembled at the computer center, or had ever been to the computer center. In *Smith* and *Kane,* however, bank officers were allowed to produce exhibits based on computerized records despite their lack of detailed understanding of the bank's computer system. Each was regarded as a supervisor of recordkeeping or a custodian of the records, and therefore qualified to testify. In *Heath* a Seattle Traffic Violations Bureau official who was responsible for teletype computer printouts was a proper foundation witness despite his distance from the computer center in Olympia.

Admissibility hinges on the trial court's discretionary determination that the computer records are reliable. RCW 5.45.020. They may be produced by one who either has custody of or has supervised the creation of the record. *Cantrill.* Although additional foundation from an employee familiar with operations at the bank's computer center would have been helpful, the testimony of Paulson and Landrum was sufficient under *Smith, Kane,* and *Heath.* The statutory elements were met and the trial court concluded that the evidence was reliable. We find no abuse of discretion to justify reversal. *Kreck.*

Ben–Neth also contends, citing *State v. Barringer,* 32 Wn. App. 882, 650 P.2d 1129 (1982), that the records were inadmissible because they contained hearsay which went to the heart of the issue at trial and could be regarded as proof on that issue. The issue here was whether Ben–Neth wrote the checks with intent to defraud, knowing he had insufficient funds in his account. RCW 9A.56.060. The account records showed his account transactions and balances, but did not directly prove his knowledge of insuffi-

cient funds or his intent to defraud. The account records were properly admitted.

## SEVERANCE

Ben–Neth next assigns error to the trial court's denial of his pretrial motion to sever counts. Discretion to join offenses is conferred by CrR 4.3(a). The defendant may make a pretrial motion to sever under CrR 4.4(a)(1), but must renew the motion at trial or it is waived under CrR 4.4(a)(2). Ben–Neth failed to renew his motion, and thereby waived any error.

## JURY VERDICT

Ben–Neth next contends that no reasonable trier of fact could have found him guilty beyond a reasonable doubt. In reviewing the sufficiency of the evidence to convict, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.'*" *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)).

To convict under RCW 9A.56.060 for unlawful issuance of checks, the trier of fact must find the defendant wrote the check with intent to defraud, knowing he had insufficient funds in his account. Where intent is an element of an offense, the trial court may permit a wide latitude of proof. *State v. Konop,* 62 Wn.2d 715, 384 P.2d 385 (1963). Ben–Neth was sent overdraft notices from the bank for each of his dishonored checks, was contacted numerous times by creditors regarding his NSF checks, and was sent bank statements showing his negative balances. He wrote several checks on the closed account and made no deposits. Taking the evidence in the light most favorable to the State, a rational jury could have found that Ben–Neth wrote the checks with intent to defraud knowing of his insufficient funds, and could have found him guilty beyond a reasonable doubt. *Green.*

Ben–Neth having violated the terms of his probation by unlawfully issuing checks, the trial court properly revoked his parole.

The judgment and sentence are affirmed.

WILLIAMS and SCHOLFIELD, JJ., concur.