On Application for Rehearing

PER CURIAM.
This court’s no-opinion order of affir-mance of December 28, 2001, is withdrawn, *305 and the following opinion is substituted therefor.
Tina West appeals a summary judgment entered for Bruno’s, Inc., on her claims alleging malicious prosecution, abuse of process, false imprisonment, invasion of privacy, and the tort of outrage. On August 20, 1999, West negotiated to Food World a check, number 1192, from her Regions Bank account written in the amount of $150. Food World is owned and operated by Bruno’s Supermarkets, Inc., formerly known as Bruno’s, Inc. (hereinafter “Bruno’s”). The bank returned West’s check, stamped “insufficient funds” to Bruno’s. Bruno’s then sent notice to West by certified mail that her check had been returned. The language in the notice is identical to the language set forth in § 13A-9-13.2, Ala.Code 1975. West received this notice on September 13, 1999.
Upon receipt of the notice, West contacted the store manager to tell her that the returned check had been paid by Regions Bank. West took bank records and her account statement to the store to verify the bank’s payment on August 24, 1999, of check number 1192. West stated that she assumed the store and her bank would handle the situation. On November 19, 1999, Bruno’s issued a warrant for West’s arrest, asserting that it never received payment and that it was holding a worthless negotiable instrument. West was arrested, but the charges were nol-prossed on March 28, 2000, upon recommendation of the prosecuting attorney.
On September 7, 2000, West sued Bruno’s, alleging malicious prosecution, abuse of process, false imprisonment, invasion of privacy, and the tort of outrage. Bruno’s filed a motion to dismiss on November 8, 2000. On December 5, 2000, West filed her objection to the motion to dismiss. The trial court conducted a hearing on Bruno’s motion to dismiss on December 7, 2000; at the conclusion of the hearing, the trial court denied the motion. On December 11, 2000, West filed interrogatories and a request for production of documents that, among other items, sought Bruno’s bank records. On December 13, 2000, Bruno’s filed both an answer to West’s complaint and a motion for a summary judgment.
West filed her brief in opposition to Bruno’s summary-judgment motion on January 4, 2001. In her brief, West argued that she needed Bruno’s bank records in order to determine whether Bruno’s claim that it had not been paid the amount of check number 1192 was valid. Because discovery was not complete, West argued further that summary judgment was inappropriate at that time. The trial court conducted a hearing on the motion and, at the conclusion of the hearing, granted Bruno’s summary-judgment motion. West filed a timely appeal to the Alabama Supreme Court, which transferred her case to this court pursuant to § 12-2-7(6), Ala.Code 1975.
This court’s review of a summary judgment is de novo. See Dudley v. Bass Anglers Sportsman Soc., 777 So.2d 135, 137 (Ala.Civ.App.2000). We apply the same standard applied in the trial court. Rule 56, Ala. R. Civ. P., establishes a two-part standard for entering a summary judgment. The trial court must determine that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Rule 56(c)(3), Ala. R. Civ. P.; Gordon v. West Weaver Baptist Church, 777 So.2d 734, 736 (Ala.Civ.App.2000).
Furthermore, to defeat a properly supported motion for a summary judgment, the nonmoving party must present “substantial evidence” creating a genuine issue of material fact. See § 12-21-12, Ala. Code 1975; Cantrell v. North River *306 Homes, Inc., 628 So.2d 551, 553 (Ala.1993). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” See West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In determining whether substantial evidence exists to defeat a properly supported summary-judgment motion, a court must view the evidence in the light most favorable to the nonmoving party. See Goodwin v. City of Fultondale, 706 So.2d 766, 767 (Ala.Civ.App.1997).
The Alabama Worthless Check Act is codified at § 13A-9-13.1 et seq., Ala.Code 1975. Bruno’s relies on the following provision stating that “[a]ny party holding a worthless negotiable instrument and giving notice in substantially similar form to that provided in [§ 13A-9-13.2(2) ] shall be immune from civil or criminal liability for the giving of the notice and for proceeding under the forms of the notice.” § 13A-9-13.2(3), Ala.Code 1975. To support its motion for a summary judgment, Bruno’s submitted a photocopy of the returned check, a photocopy of the notice sent to West, and an affidavit from Wendy Galen. The affidavit stated in part:
“3. Tina West signed a check, returned unpaid on 8/20/99.
“4. Attached is a true and accurate copy of the notice sent to Tina West as a result of that unpaid check.”
West responded to Bruno’s motion for a summary judgment with her own affidavit. That affidavit stated that as soon as she received the notice from Bruno’s, West took her bank statement to the store manager to prove that the check had in fact been paid. Previously, West had submitted to the trial court photocopies of her bank statement and a computer printout from the bank showing payment of check number 1192 on August 24, 1999. Although Bruno’s objected to the original submission of those records as unverified, West can rely on her own monthly bank statement as an accurate representation of the status of her bank account.
Bruno’s motion to strike West’s affidavit states that West’s bank statement was inadmissible hearsay because it was “not supported by the testimony of any bank officer verifying its authenticity.” That appears to be an objection based on lack of authentication rather than on hearsay, and might have been valid if the bank statement were being introduced as a record of the bank. However, West submitted the statement as her own record, upon which she relied. See State v. Cremer, 234 Kan. 594, 676 P.2d 59 (1984).
“It cannot be denied that the entries contained in bank statements are generated by the owner of the account. Bank statements are relied on every day in the business world to verify the account owner’s financial transactions. We have no hesitancy in holding that bank statements made in the regular course of business and presented to the owner of the account as a record of account transactions are a trustworthy source of information and may be admitted ... as a part of the financial records of the owner of the account.”
234 Kan. at 602, 676 P.2d at 64 (emphasis added). Moreover, even if we construe the objection by Bruno’s as one based on hearsay, we conclude that West’s affidavit was admissible. If bank statements reflecting insufficient funds are admissible to show “guilty knowledge” or “intent to defraud” in bad-check cases, see, e.g., Ledford v. State, 184 Ga.App. 556, 362 S.E.2d 133 (1987); Reynolds v. State, 172 Ga.App. 628, 323 S.E.2d 912 (1984); State v. Ricard, 535 So.2d 21 (La.App.1988); State v. Carroll, 41 S.W.3d 878 (Mo.2001); State v. *307 Ben-Neth, 34 Wash.App. 600, 663 P.2d 156 (1983), then bank statements reflecting sufficient funds are admissible to show lack of guilty knowledge or the absence of an intent to defraud. The bank records were used only in conjunction with West’s sworn statement that she believed the check was good and that it was not a worthless negotiable instrument under Alabama statutory law.
Section 13A-9-13.1, Ala.Code 1975, states in pertinent part:
“(a) A person commits the crime of negotiating a worthless negotiable instrument if the person negotiates or delivers a negotiable instrument for a thing of value and with the intent, knowledge, or expectation that it will not be honored by the drawee.
“(b) For the purposes of this section, it is prima facie evidence that the maker or drawer intended, knew, or expected that the instrument would not be honored in any of the following instances:
“(2) Payment was refused by the drawee for lack of funds, upon presentation within 30 days after delivery, and the maker or drawer shall not have paid the holder thereof the amount due thereon, together with a service charge ..., within 10 days after receiving written notice from the holder of the instrument that payment was refused upon the instrument....”
When West presented her bank statement to Bruno’s, it showed that her bank had paid the check and had debited her account for that amount, leaving a remaining balance. Unless disputed, this proved that she had no intent, knowledge, or expectation that the check would not be honored by the bank.
Section 13A-9-13.1(a) clearly requires the prosecution to prove specific intent to defraud. See Tolbert v. State, 294 Ala. 738, 321 So.2d 227 (1975). A maker or drawer “is free to testify as to his intent and mental process to rebut any presumption arising from the prima facie section [13A-9-13.1(b) ] of the Worthless Check Act.” Tolbert, 294 Ala. at 743, 321 So.2d at 232.
“The difference between the improper use of a statute as a means of punishment for debt and the proper use of a statute as a means of punishment for a criminal act is intent. Harris v. State, 378 So.2d 257 (Ala.Cr.App.), cert. denied, 378 So.2d 263 (Ala.1979). A mere failure or inability to pay a debt does not necessarily constitute theft. Theft requires the specific intention to deprive which cannot be inferred from the mere naked fact of non-payment of a debt. Thus, the theft statute was designed to punish those who exert unauthorized control over the property of another with the intent to deprive that person of his property and not to punish persons who are unable to pay a debt.
“The central and critical issue in this case is this appellant’s intent.”
Bullen v. State, 518 So.2d 227, 233-34 (Ala.Crim.App.1987).
Without a specific intent to defraud, there was no probable cause to support the issuance of an arrest warrant. Bruno’s remedy, if any, was civil, not criminal. “It is axiomatic that a charge of malicious prosecution must be supported by proof of a lack of probable cause and malice.” Liberty Loan Corp. of Gadsden v. Mizell, 410 So.2d 45, 48 (Ala.1982). “Probable cause in malicious prosecution cases is that state of facts which would lead a person of reasonable prudence to honestly believe that the claims put forth in the prior suit would prevail.” Allen v. Molton, Allen & Williams Realty Co., 495 So.2d 27, 30 (Ala.1986).
*308 A discussion of the causes of action other than malicious prosecution is unnecessary. See Cutts v. American United Life Ins. Co., 505 So.2d 1211 (Ala.1987). Because West’s affidavit creates a question of fact as to whether Bruno’s was holding a “worthless negotiable instrument” and was therefore immune from liability pursuant to § 13A-9-13.2(3), summary judgment was erroneously granted. We reverse the trial court’s summary judgment and remand the cause for further proceedings consistent with this opinion.
APPLICATION GRANTED; NO-OPINION ORDER OF AFFIRMANCE OF DECEMBER 28, 2001, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY, J., concur.
PITTMAN and MURDOCK, JJ., concur in the result.
THOMPSON, J., dissents.