95 P.3d 353 (2004)
122 Wash.App. 395
STATE of Washington, Respondent,
v.
Jesse QUINCY, Appellant.
No. 52484-4-1.
Court of Appeals of Washington, Division 1.
June 14, 2004.
Publication Ordered July 30, 2004.
*354 Jason Saunders, Washington Appellate Project, Seattle, WA, for Appellant.
Kathleen Webber, Everett, WA, for Respondent.
PER CURIAM.
A computer-generated tally of items stolen from a retailer who uses the same computer system to price goods for sale is admissible as evidence of the value of the stolen goods under the business records exception to the rule against hearsay.

BACKGROUND
Loss prevention personnel at a Fred Meyer store observed Jesse Quincy and two women behaving suspiciously, indiscriminately loading merchandise into a plastic tote in one of the store's carts. The employees monitored Quincy's movements throughout the store using close-circuit television equipment. Eventually, store employees saw Quincy leave the store with the tote through an emergency exit without paying for the merchandise. Employees apprehended Quincy, who later admitted to them, and to police, that he had taken the items.
The loss prevention officers prepared an arrest report for the store. As part of the report, the officers scanned the UPC label from each item in Quincy's tote to record the description and price of the item. The store computer generated a list and totaled the value of the stolen merchandise, which amounted to $1,673.35.
Quincy was charged with first degree theft. The court held a hearing under CrR 3.5 and determined that Quincy's confessions were admissible. At trial, Quincy objected to admission of the computer-generated list and tally as hearsay. The trial court allowed the evidence under the business record exception to the hearsay rule. Quincy was convicted as charged by a jury. This appeal followed.

DISCUSSION
Quincy first contends we must reverse because the trial court failed to enter written findings of fact and conclusions of law on the admissibility of his statements to the police, as required by CrR 3.5(c). The findings and conclusions were filed after Quincy submitted his opening brief on appeal. Accordingly, we will not reverse on these grounds unless Quincy can establish that he was prejudiced by the delay or that the findings and conclusions were tailored to meet the issues presented in his brief. State v. Byrd, 83 Wash.App. 509, 512, 922 P.2d 168 (1996). Because Quincy filed no reply brief, and does not appeal the decision to admit the statements or allege the findings were tailored, he cannot demonstrate prejudice.
Quincy next argues the trial court erred by admitting the computer-generated list and tally of the items he took from the store. The decision whether to admit evidence lies within the sound discretion of the trial court, and we will not overturn such decisions absent an abuse of discretion. State v. Bourgeois, 133 Wash.2d 389, 399, 945 P.2d 1120 (1997). An abuse of discretion occurs only when a trial court's decision is manifestly unreasonable or based upon untenable grounds or reasons. State v. Brown, 132 Wash.2d 529, 572, 940 P.2d 546 (1997).
The trial court allowed the evidence under the business records exception to the hearsay rule. This exception is codified in RCW 5.45.020, which provides:

Business records as evidence. A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.
If the statutory requisites are met, computerized records are treated the same as any other business records. State v. Ben-Neth, 34 Wash.App. 600, 603, 663 P.2d 156 (1983).
Quincy argues the State failed to lay an adequate foundation because no custodian of records testified about the accuracy and reliability of the computer-generated evidence, and because the records were prepared in *355 anticipation of litigation and not in the regular course of business.
Reviewing courts broadly interpret the statutory terms "custodian" and "other qualified witness." Id. It is not necessary that the person who actually made the record provide the foundation. Id."Testimony by one who has custody of the record as a regular part of his work or has supervision of its creation (`other qualified witness' under the statute) will suffice." Id. (citing Cantrill v. American Mail Line, Ltd., 42 Wash.2d 590, 257 P.2d 179 (1953)). For example, in Ben-Neth, we upheld admission of the defendant's bank records under the business record exception, even though the witness who provided the foundation was not a records custodian, because he was able to describe the method for retrieving monthly account statements from the computer. Id. at 604-05, 663 P.2d 156.
Here, the State's foundation witness established he had custody of the shoplifting arrest record as a regular part of his work. Loss Prevention Manager Laurent Gambaro testified that itemizing stolen merchandise is standard procedure whenever a theft occurs at the store. Gambaro explained this is done by scanning "the UPC code just like you would when you go through checkouts." Report of Proceedings (RP) (May 19, 2003) at 37. He further explained how prices are assigned to particular items and how this information is stored and accessed through the store's computer system. Fred Meyer buyers put the information into a centralized computer system, and this information is downloaded for each individual store. When items go on sale, the price changes are inputted by file maintenance clerks. Thus, Gambaro demonstrated he understood not only the method for retrieving the price and description of the stolen merchandise, but also how the computer records are created and maintained. Although Quincy correctly points out that Gambaro admitted he could not testify to the accuracy of the prices in the computer, he did establish that store employees rely upon the information in the computer for pricing merchandise and that the only way to determine the price of an item is to utilize the computer system.
Quincy concedes that an itemized list of stolen merchandise compiled from physical price tags affixed to the items constitutes a business record under our decision in State v. Rainwater, 75 Wash.App. 256, 876 P.2d 979 (1994). In that case, a security guard apprehended a shoplifter and created an evidence label listing the stolen items and their value. The trial court admitted the list, as well as the individual price tags, over the defendant's hearsay objection. We affirmed the trial court's decision, explaining that the evidence label was a record prepared in the normal course of business following the recovery of stolen merchandise, which the retailer relied upon to distinguish between goods sold and goods stolen but recovered and placed into a police evidence locker. Id. at 259-60, 876 P.2d 979.
The only difference in this case is that, rather than copying down prices written on physical price tags, the loss prevention personnel compiled the list by scanning the items. This difference is immaterial. In Rainwater, we held that "price tags constitute substantial evidence of market value only so long as the case involves a retail store that is commonly known to sell its goods for a non-negotiable price as shown on the tag." Id. at 261-62, 876 P.2d 979 (emphasis omitted). This case involves a retail store commonly known to sell its goods for a non-negotiable price as established by scanning the UPC code. Applying the same reasoning, the computer-generated prices and tally constitute business records.
Quincy next argues the evidence cannot be a business record because it was compiled solely for the purpose of litigation, not in the regular course of business. Quincy relies on testimony of Loss Prevention Specialist Ronald Richards, who stated that Fred Meyer keeps records of arrest reports and the merchandise stolen "just in case it does ever have to come to court." RP (May 19, 2003) at 79. But Gambaro also testified on this matter, stating the itemized lists of stolen items are kept in the regular course of business for every arrest.
It is axiomatic that shoplifting arrest records are likely to be used in litigation. *356 This fact alone does not mean they cannot fall within the business records exception as a matter of law. Here, witnesses established that shoplifting arrest records are created in the regular course of business and that a computer-generated list of the stolen merchandise is a necessary component of these records. There is no indication in the record that the report prepared in Quincy's case departed in any way from Fred Meyer's standard procedures.
"Admissibility hinges upon the opinion of the trial court that `the sources of information, method and time of preparation were such as to justify its admission.'" Ben-Neth, 34 Wash.App. at 603, 663 P.2d 156 (quoting 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE, § 372, at 240 (2d ed.1982)). The trial court was satisfied that the evidence met the statutory elements of a business record, and we find no abuse of discretion.
Affirmed.