IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A. as Trustee for Wamu Mortgage Pass-Through Certificates Series 2005-PR1 Trust, through their loan servicing agent JP Morgan Chase Bank, NA, | ) ) ) ) ) ) | No. 30726-3-III |
| Respondent, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| CHRISTOPHER L. SHORT, a single person; SUMMIT BANK; UNKNOWN PARTIES IN POSSESSION; OR CLAIMING A RIGHT TO POSSESSION, and UNKNOWN OCCUPANTS; and DOES 1-10 inclusive, | ) ) ) ) ) ) ) ) | |
| Appellant. | ) ) | |

FEARING, J. — Christopher Short borrowed money from Washington Mutual Bank in November 2004, and, in turn, Short executed a deed of trust to secure the loan. He ceased paying the loan in 2010. Short appeals a summary judgment order that forecloses the deed of trust. He raises many assignments of error that concern whether plaintiff Wells Fargo Bank is the holder of the note signed by Short and had authority to bring this suit. We affirm the trial court's grant of summary judgment that forecloses the deed of trust.

FACTS

Christopher Short borrowed $114,750 from Washington Mutual Bank (WaMu) in November 2004. Short executed a promissory note payable to the order of WaMu. A deed of trust secured the note encumbering real property owned by Short at 600 Cape La Belle Road, Tonasket, WA (property). The beneficiary under the deed of trust was WaMu.

The loan from WaMu to Christopher Short was bundled with other loans into a securitized trust labeled "WaMu Mortgage Pass-Through Certificates Series 2005-PR1 Trust." (WaMu Trust). Clerk's Papers (CP) at 39. In other words, the deed of trust became the asset of a separate trust. A Pooling and Servicing Agreement (PSA) governs the WaMu Trust and lists WaMu as the seller and original servicer and Wells Fargo Bank, N.A., (Wells Fargo) as trustee of the trust. Under the PSA, WaMu remained the servicing agent for Short's loan, responsible for collecting mortgage payments and authorized to foreclose.

In September 2008, the federal government's Office of Thrift Supervision closed WaMu, because of the bank's financial failure, and the Federal Deposit Insurance Corporation (FDIC) assumed the assets of WaMu as the receiver of the financial institution. As authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. § 182J(d)(2)(G)(i)(II), the FDIC, as receiver, could transfer any asset or liability of WaMu without any approval, assignment, or consent with respect to the

transfer. On September 25, 2008, the FDIC, as receiver for WaMu, and JP Morgan Chase Bank, N.A., (Chase) entered a purchase and assumption agreement. Under the agreement, Chase acquired all of the loans of WaMu. On October 2, 2008, the FDIC signed and recorded, with the King County, Washington, Director of Records and Recording, an affidavit declaring Chase to be the owner of all loans issued by WaMu. The transfer to Chase included the servicing rights to loans, including Short's loan. Chase assumed and retains possession of Short's mortgage documents for the benefit of the WaMu Trust.

On August 10, 2010, Chase executed an assignment of the Short deed of trust. It assigned "[a]ll beneficial interest under that certain Deed of Trust dated 11/30/2004 executed by CHRISTOPHER L. SHORT" to Wells Fargo, as trustee for the WaMu Trust. CP at 156.

At two hearings, Christopher Short admitted to executing the November 2004 note and deed of trust, and to failing to tender any payment since April 2010.

PROCEDURE

In November 2010, Wells Fargo filed suit against Short in Okanogan County. The complaint identified the plaintiff as "Wells Fargo Bank, N.A. as Trustee for WaMu Mortgage Pass-Through Certificates Series 2005-PR1 Trust, through their loan servicing agent JP Morgan Chase Bank, NA." CP at 408. Wells Fargo asked the court to enter judgment for $122,945.74 plus interest and other costs, declare the November 30, 2004,

3

deed of trust a valid first lien on the property, and authorize foreclosure. Wells Fargo

attached to its complaint the note, deed of trust, an affidavit from the FDIC regarding the

FDIC's receivership of WaMu, and the August 2010 assignment from Chase to Wells

Fargo.

Wells Fargo moved for summary judgment. In its motion, Wells Fargo included

the declaration of Araceli Urquidi, which states:

Under penalty of perjury, the undersigned hereby declares as follows:

1. As to the following facts, I know them to be true of my own personal knowledge, and if called upon to testify in this action, I could and would testify competently thereto.
2. I am a duly authorized agent and signer for Wells Fargo Bank, N.A. as Trustee for WaMu Mortgage Pass-Through Certificates Series 2005-PR1 Trust, and its servicing agent JP Morgan Chase Bank, NA, ("Plaintiff")[.] I am duly authorized to make this declaration on behalf of Plaintiff.
3. As an agent for the Plaintiff, I am familiar with the manner and procedure by which loan records are obtained, prepared, and maintained. Those records are obtained, prepared, and maintained by employees or agents of Plaintiff in the performance of their regular business duties at or near the time, act, conditions, or events recorded thereon. The records are made either by persons with knowledge of the matters they record or from information obtained by persons with such knowledge. I have knowledge of and/or access to those records. I personally reviewed those records when making this declaration.

CP at 353-54. Attached to Urquidi's declaration were copies of the note, the deed of

trust, the recorded affidavit from the FDIC regarding the transfer of assets from WaMu to

Chase, and the assignment of the note and deed of trust from Chase to Wells Fargo. At

the conclusion of her declaration, Araceli Urquidi identifies herself as an HL Sr.

Research Specialist. She does not describe the nature of her title.

Christopher Short objected to Urquidi's declaration, claiming Urquidi lacked

personal knowledge and was incompetent as a witness. In reply to Short's opposition,

Wells Fargo offered a second declaration of Araceli Urquidi. In this longer declaration,

Urquidi further declared:

> 1. I am over the age of 18 years and am not personally a party to this litigation. As to the following facts, I know them to be true of my own personal knowledge, and if called upon to testify in this action, I could and would testify competently thereto.
> . . . .
> 14. The subject loan, which was originally signed by Mr. Short on or about November 30, 2004, in favor of Washington Mutual Bank ("WaMu"), in an amount of $114,750 (the "Loan") was securitized into a mortgage-backed security identified as the WaMu Mortgage Pass-Through Certificates Series 2005-PRI Trust (the "Trust"). As such, the owners of the Loan are the Trust and its investors. The Trust is governed by a Pooling and Servicing Agreement (the "PSA") between WaMu, as (original) servicer, Wells Fargo Bank, N.A. ("Wells Fargo"), as (original) trustee, Christiana Bank & Trust Co., as Delaware Trustee, and Federal Home Mortgage Corporation, as Gaurantor, and the PSA governs all aspects of the Trust. A copy of that PSA is being produced with the attached documents. Exhibit E. The PSA explains, however, that the Trustee of the Trust holds the assets of the Trust for the benefit of the Trust, See PSA § 2.06, the Trustee may allow the Trust Servicer or Custodian to hold the subject loans for the benefit of the Trust, . . . which owns the subject loan.
> 15. Wells Fargo receives funds from Chase for all services rendered by Wells Fargo when executing its duties as Trustee of the Trust. Section 8.05 of the PSA requires Chase (Servicer) to "pay or reimburse [ ] [ ] the Trustee [Wells Fargo] . . . upon such trustee's request for all reasonable expenses and disbursements incurred or made by such trustee in accordance with any of the provisions of th[e] Agreement."

16. The original promissory note evidencing Mr. Short's loan is in the possession of Chase's loan record department, and is physically located in Chase's secure warehouse in Monroe, Louisiana.

CP at 109-12. The second declaration attached the WaMu Trust's PSA.

Christopher Short filed a declaration opposing Wells Fargo's motion for summary judgment. The declaration contained little, if any, facts, but argued that the declarations of Araceli Urquidi should be rejected. Short's declaration did not address his alleged default. In his memorandum opposing the motion, Short accused Wells Fargo, WaMu, and Chase of corruption that constitutes a "greater threat to the health and welfare of our nation than any threat from an external enemy." CP at 334. The trial court granted Wells Fargo's motion for summary judgment and entered a decree of foreclosure.

## LAW AND ARGUMENT

### ISSUE 1: AFFIDAVITS UNDER CR 56(e)

Christopher Short contends the trial court erred by allowing into evidence and considering Urquidi's declaration and its supporting documents. CR 56(e) requires that affiants be competent to testify and have personal knowledge. Although Urquidi claims to have personal knowledge in her declaration, Wells Fargo, according to Short, submitted no evidence substantiating this claim. Short contends Wells Fargo could have described Urquidi's length of employment, her job description, or the steps she took to obtain personal knowledge, but it did not.

Christopher Short admitted to signing the promissory note and the deed of trust.

6

Therefore, his admission authenticates the debt and its security. No one else's testimony is needed to establish the obligation and default. Someone's testimony is needed to confirm the assignment of the deed of trust to Wells Fargo. So we must decide if Araceli Urquidi's declarations contain admissible evidence of the assignment.

The trial court accepted the declaration testimony of Araceli Urquidi. This court reviews a trial court's ruling on admissibility of evidence in a summary judgment proceeding de novo. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). A party may object to an affidavit filed in support of a motion for summary judgment if it sets forth facts that would not be admissible in evidence. *Smith v. Showalter*, 47 Wn. App. 245, 248, 734 P.2d 928 (1987).

Short contends that the trial court admitted affidavits in violation of CR 56(e). CR 56(e) reads:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Under CR 56(e), affidavits thus have three substantive requirements: they must be made on personal knowledge, be admissible in evidence, and show affirmatively that the affiant is competent to testify to the information contained in the affidavit. The requirement of personal knowledge might require someone who signed or witnessed the signing of a document to establish its authenticity. Nevertheless, Washington and other courts

consider the requisite of personal knowledge to be satisfied if the proponent of the evidence satisfies the business records statute. *Discover Bank v. Bridges*, 154 Wn. App. 722, 226 P.3d 191 (2010).

RCW 5.45.020, Washington's business records statute, states:

A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Reviewing courts broadly interpret the statutory terms "custodian" and "other qualified witness" under the business records statute. *State v. Smith*, 55 Wn.2d 482, 348 P.2d 417 (1960); *State v. Ben-Neth*, 34 Wn. App. 600, 603, 663 P.2d 156 (1983); *State v. Quincy*, 122 Wn. App. 395, 399, 95 P.3d 353 (2004). Under the statute, the person who created the record need not identify it. *Cantrill v. Am. Mail Line, Ltd.*, 42 Wn.2d 590, 257 P.2d 179 (1953); *Ben-Neth*, 34 Wn. App. at 603. The principal rule that benefits Wells Fargo is that testimony by one who has custody of the record as a regular part of work will suffice. *Cantrill*, 42 Wn.2d 590; *Quincy*, 122 Wn. App. at 399; *Ben-Neth*, 34 Wn. App. at 603. Identification by a custodian may be sufficient even though the custodian was hired after the record was made. 5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 803.42, at 107 (5th ed. 2007) (citing *Cantrill*, 42 Wn.2d 590). Admissibility hinges upon the opinion of the court that the

8

sources of information, method and time of preparation were such as to justify its

admission. *Quincy*, 122 Wn. App. at 401; *Ben-Neth*, 34 Wn. App. at 603. Computerized

records are treated the same as any other business records. *Quincy*, 122 Wn. App. at 399.

In *Seattle v. Heath*, 10 Wn. App. 949, 520 P.2d 1392 (1974), the trial court

admitted teletype printed material from a teletype printer connected to a central computer

as a business record. Foundation testimony was furnished by an assistant director of the

Traffic Violations Bureau of the Seattle Municipal Court, although the computer was

located in Olympia. The assistant director identified two exhibits as abstracts of driving

records stored in the computer, described how the records are retrieved, and testified that

a clerk under his supervision had obtained the records for him. He was custodian of the

printouts after they came from the teletype but not the custodian for the entire

department. The Court of Appeals affirmed the trial court's admission of the records.

A controlling decision is *Discover Bank*, 154 Wn. App. 722. Discover Bank relied

on three affidavits from employees of DFS Services LLC, an affiliated entity that assisted

Discover Bank in collecting delinquent debts. The three affiants stated in their respective

affidavits that (1) they worked for DFS, (2) that two of the affiants had access to the

Bridges' account records in the course of their employment, (3) the same two affiants

testified based on personal knowledge and review of those records, and (4) the attached

account records were true and correct copies made in the ordinary course of business.

The Court of Appeals reversed the trial court in part on the ground that Discover Bank

9

lacked a signed agreement with the Bridges. Nevertheless, the Court of Appeals rejected Bridges' contention that the trial court improperly considered the affidavits.

Like in *Discover Bank*, Araceli Urquidi had knowledge of and access to Short's loan documents and the assignments among bank entities. Urquidi personally reviewed those records. She has knowledge of how the records were "obtained, prepared, and maintained by employees or agents of [Wells Fargo] in the performance of their regular business duties at or near the time, act, conditions, or events recorded thereon." CP at 110. Urquidi does not expressly state she was a custodian of the records, but neither did the affiants in *Discover Bank*.

Wells Fargo and its agents could conceivably have incentive to refashion records to misstate the debt and the default of Christopher Short. But it is difficult to conceive of incentive to doctor records pertaining to the assignments.

Unreported court decisions show that Areceli Urquidi has signed affidavits for different bank entities and we wonder why she does so. *See Bank of Am., NA v. Short*, noted at 176 Wn. App. 1032, 2013 WL 5408673, *review denied*, No. 89610-1 (Wash. Mar. 5, 2014) (ostensibly involving the same Short who is a party in this case); *King v. JP Morgan Chase Bank*, 2013 WL 3353879 (D. Colo.); *Wells v. Chase Home Fin., LLC*, 2010 WL 4858252 (W.D. Wash.). Nevertheless, we note that the other courts issuing the unreported decisions have accepted affidavits signed by Urquidi in support of or in opposition to summary judgment motions.

10

Short also assigns error to the exhibits attached to the Urquidi declaration as inadmissible under ER 1002, the best evidence rule. Short does not support this assignment with argument and briefing. Thus, the assignment of error is deemed abandoned. *Huebner v. Sales Promotion, Inc.*, 38 Wn. App. 66, 73, 684 P.2d 752 (1984). Anyway, each exhibit would be admissible as duplicates under ER 1001(d), and ER 1003.

ISSUE 2: GRANT OF SUMMARY JUDGMENT

Christopher Short argues that, even after accepting Areceli Urquidi's declaration, summary judgment should not be awarded Wells Fargo. He contends that Wells Fargo did not establish a chain of title to the deed of trust, or at least a question of fact arises as to the chain of title. He also argues that Wells Fargo needed to but failed to produce the original promissory note.

This court reviews a grant of summary judgment de novo, undertaking the same inquiry as the trial court. *Aba Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). Summary judgment is proper if, viewing the facts and reasonable inferences most favorably to the nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c); *Versuslaw, Inc. v. Stoel Rives, LLP*, 127 Wn. App. 309, 319-20, 111 P.3d 866 (2005). The moving party has the initial burden to show that there is no genuine issue as to any material fact. *Hiatt v. Walker Chevrolet Co.*, 120 Wn.2d 57, 66, 837 P.2d 618 (1992). If the moving party satisfies its

11

burden, only then does the burden shift to the nonmoving party to present evidence that material facts are in dispute. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

CHAIN OF TITLE

We first review which bank has which rights in regards to Christopher Short's deed of trust. A deed of trust is a three-party transaction, in which land is conveyed by a borrower, the grantor, to a trustee, who holds title in trust for a lender, the beneficiary, as security for credit or a loan the lender has given the borrower. *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 92-93, 285 P.3d 34 (2012) (citing 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE TRANSACTIONS § 17.3, at 260 (2d. ed. 2004)). Here, Short was the grantor, Land America Transnation was the trustee, and WaMu was the beneficiary.

Bank beneficiaries that originate the mortgage, like WaMu, commonly transfer the notes and mortgages, often in blocks, to large secondary financers, such as insurance companies, real estate investment trusts, or the Federal National Mortgage Corporation (Fannie Mae). The originating financer generally continues to act as agent for collection and servicing of the loan. 18 STOEBUCK & WEAVER, *supra*, § 18.31, at 365. This common scenario occurred here. In 2005, WaMu transferred its interest in Short's mortgage to the WaMu Trust, a real estate investment trust, remaining servicer for the loan.

12

The WaMu Trust also consists of a grantor, trustee, and beneficiaries—with WaMu as grantor, Wells Fargo as trustee, and investors in the WaMu Trust as beneficiaries. As it would be impractical for a multitude of investor beneficiaries to each possess the WaMu Trust's plethora of notes and deeds of trust, the originating bank grantor servicer typically retains the original documents. 18 STOEBUCK & WEAVER, *supra*, § 18.31, at 365. This general practice of retention explains why Chase, as WaMu's successor and servicer of the loan, still has physical custody of Short's original note and deed of trust. Thus, currently, Chase physically holds the note and deed of trust as the WaMu Trust's servicing agent and Wells Fargo holds legal title as trustee for the WaMu Trust.

As trustee for the WaMu Trust, which owns equitable title in Short's note and deed of trust, Wells Fargo may foreclose on the deed of trust. WaMu transferred its ownership interest to the WaMu Trust, with Wells Fargo as trustee. The WaMu Trust's governing instrument, the PSA, does not limit Wells Fargo's authority as trustee to foreclose. Merely because the PSA delegates to another the right to institute a suit in its capacity does not affect the basic premise that the trustee of an express trust is the real party in interest when suing on behalf of the trust. *LaSalle Bank Nat. Ass'n v. Lehman Bros. Holdings, Inc.*, 237 F. Supp. 2d 618, 633 (D. Md. 2002). Because the WaMu Trust owns Short's mortgage and Wells Fargo is its trustee, Wells Fargo was a proper plaintiff to foreclose Short's deed of trust.

13

SHOW ME THE NOTE

Short contends that neither the WaMu Trust nor Wells Fargo as its trustee may bring this foreclosure action because neither holds the note. Short thus contends that only the holder of the note and deed of trust may bring a foreclosure action and, to prove its status as holder, a foreclosing plaintiff must file the original note and deed of trust with the court. This argument currently is asserted in the litigation aftermath of our recent financial crisis, caused by mortgage backed securities, and is known as the "show me the note" argument. Bradley T. Borden et al., *Show Me The Note!*, 19 WESTLAW J. BANK & LENDING LIAB., June 3, 2013, at 3. ("News outlets and foreclosure defense blogs have focused attention on the defense commonly referred to as 'show me the note.' This defense seeks to forestall or prevent foreclosure by requiring the foreclosing party to produce the mortgage and the associated promissory note as proof of its right to initiate foreclosure.").

Short cites no applicable authority to support his contention that Wells Fargo must file the original note and deed of trust with the trial court in order to obtain a judgment of foreclosure. Chapter 61.12 RCW governing judicial foreclosures contains no requirement. Short cites a Whatcom County local civil rule, but the property lies across the mountains in Okanogan County.

Short also cites RCW 62A.3-301, which defines a "person entitled to enforce an instrument" as:

(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-309 or 62A.3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

RCW 62A.1-201(b)(21) states that, "'Holder' with respect to a negotiable instrument, means . . . [t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Neither chapter 62A.3 RCW nor relevant case law define "possession." But *Black's Law Dictionary* defines "possession" as:

> 1. The fact of having or holding property in one's power; the exercise of dominion over property. 2. The right under which one may exercise control over something to the exclusion of all others; the continuing exercise of a claim to the exclusive use of a material object.

BLACK'S LAW DICTIONARY 1281 (9th ed. 2009).

Wells Fargo does not physically possess Short's note and deed of trust. Chase does. But Short's note specifically allowed WaMu to transfer it. Chase succeeded WaMu and then transferred the note to Wells Fargo as trustee for the WaMu Trust. While Chase continues to physically possess Short's note and deed of trust as servicing agent for the WaMu Trust, Wells Fargo holds legal title to both. The WaMu Trust, through its trustee Wells Fargo, has control over Short's mortgage to the exclusion of all others. Chase may "exercise dominion"—collect payments or foreclose—only to the

15

extent authorized by the WaMu Trust through the PSA. The WaMu Trust possesses Short's note and deed of trust. Since the note is payable to the WaMu Trust as Chase's transferee, the WaMu Trust is also its "'Holder.'" CP at 117.

As trustee for the WaMu Trust, Wells Fargo may enforce the note or foreclose on the deed of trust. Nothing in chapter 62A.3 RCW requires Wells Fargo to file Short's note with the court.

To commence a judicial foreclosure action, a plaintiff must show an ownership interest in the mortgage. Washington Practice, under the heading "[c]ommencing the lawsuit" for its chapter on judicial foreclosure states: "The complaint should identify the plaintiff and state why the plaintiff is entitled to pursue the foreclosure, i.e., that the plaintiff is the *current owner* of the promissory note and mortgage." 18 STOEBUCK & WEAVER, *supra*, § 19.5, at 378 (emphasis added). To prove ownership, a foreclosing party does not need to file the original note and deed of trust with the trial court.

By analogy, for nonjudicial foreclosures of residential real property, RCW 61.24.030(7)(a) requires that "the trustee shall have proof that the beneficiary is the *owner* of any promissory note or other obligation secured by the deed of trust." (Emphasis added.) To show ownership, "[a] declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof." RCW 61.24.030(7)(a). As our Supreme Court noted in *Bain*, "[i]f the original lender had sold

the loan, that purchaser would need to establish ownership of that loan, either by demonstrating that it actually held the promissory note or by documenting the chain of transactions." *Bain*, 175 Wn.2d at 111. Either method of showing ownership is sufficient. But there is no requirement to file originals.

## CONCLUSION

The trial court properly granted summary judgment to Wells Fargo as trustee for the WaMu Trust. We affirm.

_____
Fearing J.

WE CONCUR:

_____  _____
Brown, J.            Kulik, J.P.T.