IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2015 JUN -8 AM 8:55
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71530-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| KIMBERLY ANN BAILEY, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | FILED: June 8, 2015 |
| | ) | |

BECKER, J. — Once a trial court decides that there are sufficient facts from which a reasonable person could conclude that a defendant made an adoptive admission, the question of whether the defendant actually adopted the statement is an issue for the jury. Here, the defendant signed statements admitting the crime. A reasonable jury could conclude her signature meant she was adopting the contents of those documents as her own statements. We conclude the documents were properly admitted.

Kimberly Ann Bailey was caught shoplifting at two department stores in Seattle. She was ultimately convicted of one count of organized retail theft in the second degree under RCW 9A.56.350(1)(c). This crime requires evidence of theft or possession of retail items with a cumulative value of at least $750. Bailey alleges the trial court erred when it allowed the State to present her signed statements as an adoptive admission of the price of the stolen merchandise.

The decision to admit evidence lies within the trial court's discretion. A court abuses its discretion when it misapplies the law or predicates its decision on incorrect legal principles. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

An out-of-court statement introduced to prove the truth of the matter asserted is generally inadmissible under the prohibition against hearsay. ER 801(c), 802. However, a statement is not hearsay if it is offered against a party and is "a statement of which the party has manifested an adoption or belief in its truth." ER 801(d)(2)(ii). Before admitting evidence under ER 801(d)(2)(ii), trial courts must, as a foundational matter, determine whether the statement and circumstances "were such that it is reasonable to conclude the party-opponent would have responded had there been no intention to acquiesce." State v. Neslund, 50 Wn. App. 531, 551, 749 P.2d 725, review denied, 110 Wn.2d 1025 (1988). Whether a defendant *actually* adopted the statement, however, is a question for the jury. Neslund, 50 Wn. App. at 551-52.

Bailey specifically takes issue with the admission of exhibits 4, 9, and 18. These exhibits are Bailey's signed statements. It is undisputed that Bailey admitted theft in these statements. But the statements also incorporated computer-generated lists of the merchandise and the price of each item she stole. Bailey claims the State presented insufficient evidence that she admitted the price of those items.

Exhibit 4 was prepared by a loss prevention officer at one of the stores after she caught Bailey shoplifting in December 2012. The officer testified that

2

she prepared exhibit 4 as required by the store's loss prevention policies. Bailey signed exhibit 4, which begins with the following statement:

> Consent of: Kimberley Ann Bailey. I admit of my own free will, without threats or promises, that on 12/18/12 I took the following items listed below from the possession of [store].

That paragraph is followed by a list itemizing five items of jewelry by price, inventory number, and department. Below the itemized list is the following statement:

> All of which is $555.28. When I took the merchandise, I did so intending it for my own personal use knowing I was depriving [store] of their property.

The officer testified that she discussed each item listed in the admission statement with Bailey before Bailey signed the document. She further testified that Bailey mistakenly believed that two of the stolen necklaces listed in the itemized portion of the admission statement were the same. Bailey signed the statement only after the officer clarified that one of the necklaces was teardrop in shape while the other resembled a diamond.

Another loss prevention officer at the same store laid the foundation for exhibit 9. He testified that he prepared exhibit 9 after he caught Bailey shoplifting in January 2013. Exhibit 9 is similar to exhibit 4. Bailey signed exhibit 9, which begins with the following statement:

> Consent of: Kimberley Ann Bailey. I admit of my own free will, without threats or promises, that on 1/26/13 I took the following items listed below from the possession of [store].

That paragraph is followed by a list itemizing two bracelets and a ring by price, inventory number, and department. Below that list is the following statement:

All of which is $145.05. When I took the merchandise, I did so intending it for my own personal use knowing I was depriving [store] of their property.

The loss prevention officer testified that he read exhibit 9 aloud to Bailey and explained its contents to her before she signed the document.

Exhibit 18 is a "Statement of admission" prepared by a loss prevention officer at the second store after Bailey was caught shoplifting jewelry on January 11, 2013. The exhibit begins with the following statement:

I, Kimberly Ann Bailey . . . make this statement voluntarily and of my own free will and accord, without intimidation by threats or promises, that on Friday, January 11, 2013, I did take merchandise and/or cash belonging to [store] without consent or permission and with the intent to permanently deprive [store] of their property.

That paragraph is followed by a list of 18 pieces of merchandise itemized by description, quantity, and price, totaling $822. Bailey's signature and address are located below the itemized list.

With respect to each exhibit, the loss prevention officers testified that the price listed for each item was obtained by scanning the item's bar code number into the store's computer. That process generates the item price from the store's computer database.

Bailey contends exhibits 4, 9, and 18 were inadmissible because the State did not establish that she knew how the department store computers generated the retail prices listed in each exhibit. According to Bailey, the State had to prove she knew how each retailer's computer system works. We do not agree that such proof is required to show that Bailey manifested an adoption or belief in the truth of the information contained in the exhibits. In each exhibit, the material

4

admissions were the fact of the theft and the price of the items taken. Whether Bailey understood how the department store computers functioned to generate the alleged retail prices is immaterial. The threshold issue under the adoptive admission doctrine is not whether the party understood how the document was created, it is whether the party has manifested an adoption or belief in its truth. ER 801(d)(2)(ii).

Bailey signed admission forms that itemized the prices of the stolen merchandise. The circumstances were such that it is reasonable to conclude she would have refused to sign had she not intended to acquiesce in the prices listed. Exhibits 4, 9, and 18 were therefore properly admitted.

Bailey also assigns error to the admission of a computerized printout presented as exhibit 29. The trial court admitted exhibit 29 as a business record over Bailey's objection that it was hearsay.

Notwithstanding the prohibition barring hearsay evidence, properly authenticated business records are generally admissible at trial.

> A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

RCW 5.45.020.

To qualify under the business records exception, the proponent must show that a record (1) is that of a business; (2) produced and kept in the regular course of that business; (3) memorializes an act, condition, or event; (4) at or near the

5

time of that act, condition, or event; and (5) was produced under circumstances that suggest reliability. State v. Ben-Neth, 34 Wn. App. 600, 602-03, 663 P.2d 156 (1983). A document that is specifically prepared for trial is not admissible under the business records exception if that document is not made in the regular course of business. Owens v. City of Seattle, 49 Wn.2d 187, 193-94, 299 P.2d 560 (1956).

Exhibit 29 is a collection of computer-generated receipts. It was compiled by a loss prevention officer at the second store at the request of the prosecutor, 10 months after the shoplifting event. The purpose was to show the company-wide prices of the items Bailey stole as of the date she stole them. The loss prevention officer testified that the store maintains an electronic database that records every purchase, return, and voided transaction associated with an item's unique barcode at the time the event occurs. The number is located on an item's price tag and is scanned into the store's database at the time of purchase. The officer testified that she obtained the receipts in exhibit 29 by conducting a search for the unique bar code number associated with the items stolen by Bailey on the date of the theft. She said that she pulled the receipts from the database 10 months after the theft at the prosecutor's direction in order to determine the items' sale prices, but the same information could have been pulled "in real time."

Bailey concedes the information compiled in exhibit 29 came from a database created at the time she shoplifted. Nevertheless, she contends exhibit 29 is not a business record because the exhibit itself is not a document produced

and kept in the store's regular course of business and it was produced specifically for litigation.

The trial court determined the report was simply a printout of what already existed and admitted the compilation.

> So it's not correct to say that the record was created in October. It was created back January. It just existed in the electronic form, and somebody ended up asking for the date range, and somebody hit the print button. That's very different than to say it was generated for purposes of litigation. It was printed at that point, yeah, for purposes of litigation, but it was simply a printout of what already existed at the time it was generated.

We addressed similar evidentiary issues arising in connection with retail theft in State v. Quincy, 122 Wn. App. 395, 95 P.3d 353 (2004), review denied, 153 Wn.2d 1028 (2005), and State v. Rainwater, 75 Wn. App. 256, 261, 876 P.2d 979 (1994), review denied, 127 Wn.2d 1010 (1995). In these cases, we upheld the superior court's decision to admit price tags as business records as well as computer-generated itemized lists of stolen merchandise created by scanning bar codes.

The fact that the receipts were compiled after the theft is immaterial because they were records created at or near the time of Bailey's theft. The act of collecting the receipts and prices and assembling them into one document to be used at trial did not diminish the accuracy or reliability of the information. Because the records were created during the regular course of business, this case is distinguishable from Owens, a case in which the data in the exhibit was specially created for trial. It would elevate form over substance to hold that

7

stapling the receipts together into a single exhibit took them out of the business records exception.

We find no abuse of discretion in the admission of the challenged exhibits. Affirmed.

Becker, J.

WE CONCUR:

Trickey, J.

Schindler, J.