2014 MAY 19 AM 10: 53



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | No. 69507-0-I |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| KEVIN JOHN MORAN, | ) | |
| | ) | |
| Appellant. | ) | FILED: May 19, 2014 |
| | ) | |

DWYER, J. — Kevin Moran was charged with and convicted of residential burglary after tampering with a sewage pipe at the house of his ex-wife, Karen Moran. Kevin[1] cut open the sewage pipe and filled it with foam that hardens and expands once it contacts air, which caused the toilet and the bathtub to back up. To carry out his act of sabotage, Kevin crawled underneath the deck, through an access door set in the house's foundation, and into a lighted area beneath the house with access to the pipe. On appeal, he contends that the State failed to present sufficient evidence that he entered a "dwelling," as required by the residential burglary statute. He also contends that the trial court erred in denying his motion for a new trial based on newly discovered evidence. We hold that sufficient evidence was presented at trial to support Kevin's conviction of

---

[1] As this case involves three individuals who share the last name "Moran," our opinion will refer to each by his or her first name. No disrespect is intended.

residential burglary, and that the trial court did not abuse its discretion in denying his motion for a new trial. Accordingly, we affirm.

I

Kevin and Karen were married for 23 years, during which time they built a house together. Kevin was the general contractor and did a fair amount of labor on the house. The couple divorced in 2007. In the divorce decree, Karen was awarded sole possession of the house, but Kevin retained half ownership and both parties agreed that they would eventually sell the house and split the sale proceeds. Still, Kevin was required to obtain Karen's permission in order for him to enter the premises. Although their divorce had begun amicably, their relationship deteriorated over time. Kevin exhibited "tremendous animosity" toward Karen, based, in part, on the fact that she maintained possession of the home.

On December 23, 2010, Karen left the house to pick up her boyfriend who had come in from out of town to visit. Kevin had not asked for Karen's permission to come to the house on that day. When Karen returned with her boyfriend to the house, she found a message spray-painted in red on the garage door: "Thou shalt not covet." Later that evening, a toilet on the main floor began to back up, and the following day the bathtub also began to back up. Karen called a plumber, who went underneath the house and discovered that a sewer pipe had recently been patched using plumber's cement. The plumber concluded that the sewer pipe underneath the house had been cut and filled with foam that hardens and expands once it contacts air. This caused the toilet and

the bathtub to back up.

In order to reach the only access door to the area in which the sewer pipe was located, it is necessary to first remove the lattice that hangs down from the deck to the ground and then crawl under the deck a short distance. The access door is set in the foundation of the house. Once through the access door, the area is lighted and there is enough space to stand. The floor is covered with plastic, nothing is stored there, and the space cannot be accessed from inside the house.

Kevin, who was living with his girl friend, Lynda Kozak, at the time, told Kozak that he had cut a pipe underneath the house and filled it with "some kind of a solution" so that the toilet and shower would back up with sewage. He bragged that he had "F'ed up their Christmas," presumably referring to Karen and her boyfriend. Kozak also found a receipt from Home Depot listing several purchases, including foam filler and spray paint.

Shawn Moran, Kevin's and Karen's son, called Kevin to confront him about tampering with the sewer pipe. Karen listened to their conversation on Shawn's speakerphone, and heard Kevin tell Shawn to "let them clean up their own shit," that they could not prove that he had done anything, and that Shawn should not get involved.

In May 2011, Kozak contacted the Snohomish County Sherriff's Office and turned over to them the Home Depot receipt. She admitted that she contacted the authorities out of anger after Kevin moved out, taking with him, she believed, some of her personal belongings. After Kozak contacted the authorities, they

obtained a video from Home Depot showing Kevin purchasing the items on the day in question.

The State charged Kevin by information with committing the crime of residential burglary. The case was tried to a jury. After the State rested, Kevin argued that the State had presented insufficient evidence for the jury to find that he had entered or remained unlawfully in a "dwelling"—a necessary element to support a conviction of residential burglary. He argued that the State should only be permitted to proceed with a charge of burglary in the second degree. The trial court denied the defense request. The jury was instructed on residential burglary and on the lesser-included offense of second degree burglary of a "building." The jury convicted Kevin of residential burglary and he was sentenced within the standard range.

After the trial, Kevin's son provided a statement to the Snohomish County Sherriff's Office, wherein he indicated that Kozak had offered to pay him to tamper with the sewer pipe. Kevin moved for a new trial based on this statement. The trial court denied the motion, concluding that the statement was merely impeachment evidence and that it would not have changed the result of the trial.

II

Kevin contends that insufficient evidence was presented at trial to support his conviction of residential burglary. This is so, he asserts, because the State failed to establish that he entered or remained unlawfully in a "dwelling." We disagree.

- 4 -

"When reviewing a challenge to the sufficiency of the evidence, we must determine 'whether, after viewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Phuong, 174 Wn. App. 494, 501-02, 299 P.3d 37 (2013) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). We employ this standard of review "to ensure that the trial court fact finder 'rationally appl[ied]' the constitutional standard required by the due process clause of the Fourteenth Amendment, which allows for conviction of a criminal offense only upon proof beyond a reasonable doubt." Phuong, 174 Wn. App. at 502 (alteration in original) (quoting Jackson, 443 U.S. at 317-18). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Kevin asserts that the State proffered insufficient evidence to support his conviction of residential burglary. As enacted by our state legislature, the crime of residential burglary is as follows:

> (1) A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person *enters* or remains unlawfully *in a dwelling* other than a vehicle.
> (2) Residential burglary is a class B felony. In establishing sentencing guidelines and disposition standards, residential burglary is to be considered a more serious offense than second degree burglary.

RCW 9A.52.025 (emphasis added). "Dwelling" is defined as "*any building* or structure, though movable or temporary, *or a portion thereof*, which is *used* or *ordinarily used by a person for lodging*. RCW 9A.04.110(7) (emphasis added).

We first inquire which building or structure is at issue here. The record, as well as the parties' briefing, reveals that the only building or structure at issue is the house.

We next inquire as to the use of the house. The record establishes that the house was being used for lodging. Kevin does not contest this.

We finally inquire whether Kevin entered a portion of the house and, if he did, whether his entry was unlawful. The record establishes that Kevin did, in fact, enter a portion of the house. In order to access the area at issue, Kevin would have had to first remove the lattice that hung down from the deck to the ground and then crawl under the deck to reach the access door, which was set in the foundation of the building. Once through the access door, Kevin would have entered a lighted area with plastic covering the floor, which was large enough for him to stand up in. Clearly, this enclosed area beneath the living space, regardless of what moniker is assigned to it, was a portion of the house. The access door was set in the house's foundation, the house's utilities were accessible from the area, and access could only be gained by crawling underneath the deck of the house. Therefore, when Kevin entered the area, he entered a portion of the house.

Furthermore, the record establishes that Kevin's entry was unlawful. Although Kevin had ownership rights in the house, Karen was awarded sole possession of the house in the divorce decree. Kevin could only enter the premises after obtaining Karen's permission. On the day in question, the record shows that he did not obtain her permission. Accordingly, his entry was

- 6 -

unauthorized and, hence, unlawful.

Nevertheless, in support of his contention that the area at issue did not constitute a dwelling, Kevin argues that (1) no one was living in the area at issue, and (2) it was inaccessible from inside the residence. We have already considered and rejected Kevin's first argument. State v. Neal, 161 Wn. App. 111, 114-15, 249 P.3d 211 (2011) (although no one was living in a tool room contained within an apartment building, the tool room constituted a "portion" of a building that was used for lodging). With respect to Kevin's second argument, the plain language of the statute does not require an area such as this to be accessible from inside the living space of a residence in order to be a "portion" of the "dwelling." Moreover, although no court in Washington has considered Kevin's second argument, courts in other jurisdictions have considered similar arguments and rejected them. See, e.g., Burgett v. State, 161 Ind. App. 157, 314 N.E. 2d 799, 803 (1974) ("Being under the same roof, functionally interconnected with and immediately contiguous to other portions of the house, it requires considerable agility to leap over this fulsome interrelationship to a conclusion that a basement is not part of a dwelling house because no inside entrance connects the two.").

A plain reading of the statute leads to the conclusion that sufficient evidence was presented at trial to support Kevin's conviction of residential burglary.

III

Kevin also contends that the trial court abused its discretion by denying his motion for a new trial based on newly discovered evidence. This is so, he avers, because the trial court misconstrued the nature of the new evidence, thereby erroneously concluding that it was merely impeachment evidence that would not have changed the result of the trial. We disagree.

A denial of a motion for a new trial is reviewed for abuse of discretion. State v. Burke, 163 Wn.2d 204, 210, 181 P.3d 1 (2008). "[D]iscretion is abused if it is exercised on untenable grounds or for untenable reasons, such as a misunderstanding of the underlying law that causes nonharmless error in the trial." Burke, 163 Wn.2d at 210. This discretion does not allow the trial court to "weigh the evidence and substitute its judgment for that of the jury, simply because it may disagree with the verdict." State v. Williams, 96 Wn.2d 215, 221, 634 P.2d 868 (1981). "In this state a trial judge is not deemed a 'thirteenth juror.'" Williams, 96 Wn.2d at 221-22.

A new trial should be granted on the basis of newly discovered evidence when the defendant has demonstrated that the evidence: "(1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching." Williams, 96 Wn.2d at 222-23. "The absence of any one of these five factors is grounds for the denial of a new trial." Williams, 96 Wn.2d at 223.

The basis for Kevin's motion for a new trial was a statement given by Shawn, his son, to the Snohomish County Sherriff's Office, wherein Shawn stated, among other things, that Kozak, Kevin's ex-girlfriend, had offered to pay Shawn $300 to compromise the sewer pipe at his mother's house and that he had overheard conversations between his mother and Kozak discussing how they could get back at Kevin. The trial court denied Kevin's motion, concluding that the newly discovered evidence would not probably change the result of the trial and that the evidence was merely impeachment evidence.

On appeal, Kevin contends that the trial court misapprehended the nature of the new evidence, which led to its conclusion that it would not probably change the result of the trial. Specifically, he contends that Shawn's statement—considered with Kozak's admission that she only notified the authorities out of desire for retaliation, and Kevin's testimony that he bought the items from Home Depot at Kozak's direction—would likely change the result of the trial. Although Shawn's statement does provide an additional theory that could have been argued at trial, Kevin does not explain why this new theory would probably change the result of the trial. Rather than explain why the jury would reject the State's theory and accept the new theory based on Shawn's statement, Kevin's briefing simply asserts that the result of the trial likely would change. This does not provide a tenable basis for us to conclude that the trial court abused its discretion in denying Kevin a new trial. See State v. Wilson, 71 Wn.2d 895, 899, 431 P.2d 221 (1967) (noting the "oft repeated observation that the trial judge who has seen and heard the witnesses is in a better position to evaluate and adjudge

- 9 -

than can we from a cold, printed record").

Affirmed.

_____
Dwyer, J.

We concur:

_____
_____
Leach, J.