IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON, | No. 83762-1-I |
| Respondent, | |
| v. | |
| SHORT, TYNAN QUADE, | UNPUBLISHED OPINION |
| Appellant. | |

BOWMAN, J. — Tynan Quade Short appeals his jury conviction for residential burglary. Short argues the trial court erred by refusing to instruct the jury that an attached deck is not a "dwelling" under the residential burglary statute, by failing to sufficiently investigate whether a juror was sleeping, and by admitting a pawnshop transaction receipt under the business records exception to hearsay. Short also claims ineffective assistance of counsel and cumulative error entitle him to a new trial. We affirm.

FACTS

On December 7, 2015, Christopher Noseck returned home to find his house burglarized and the sliding glass door leading to his back deck "pried wide open." He found his strongbox, which he kept in the master bedroom closet, in the garage. Someone had forced open the strongbox and strewn his personal documents on the ground. He also found several items missing from the home,

including his wedding band, his wife's wedding band, and three of his wife's gemstone rings.

Noseck called the police, and two officers responded. While inspecting the crime scene, an officer noticed a palm print on the outside surface of a window next to the sliding glass door. The officer dusted the palm print and collected an impression.

In September 2017, the Lake Stevens Police Department assigned Detective Kerry Bernhard to the case. Detective Bernhard sent the palm print to the Washington State Patrol Crime Laboratory (WSPCL) for analysis. The WSPCL entered the print in a database that returned as a match for Short.

Detective Bernhard looked up Short's name in a "database associated with the secondhand sale of items." The search revealed that Short engaged in a transaction with Cash America Pawn in North Seattle soon after the Noseck burglary. In early 2018, Detective Bernhard contacted Cash America and spoke to employee Jonathan Bellman. Bellman gave Detective Bernhard a transaction receipt showing that Short sold three women's gemstone rings to Cash America on December 15, 2015. The receipt's description of the rings was similar to those stolen from the Noseck home a week earlier.

On February 20, 2018, the State charged Short with one count of residential burglary committed while on community custody.[1] On December 6, 2019, Detective Bernhard collected palm prints from Short to compare as a

---

[1] On November 7, 2019, the State amended the information to add one count of first degree trafficking in stolen property committed while on community custody. The State dismissed that count before trial.

known reference to the print found at the Noseck house on December 7, 2015.

She then sent them to the WSPCL for analysis. WSPCL "indicated the prints

were a match" and again confirmed they belonged to Short.

In November 2021, the case proceeded to a jury trial. The State called

Bellman as the custodian of the pawnshop transaction receipt, which it offered

under the business record exception to hearsay.[2] Short objected and argued

that "Bellman is not [a] proper custodian of records to be able to admit [the]

document." Short argued that the receipt was created in 2015, before Bellman

worked at Cash America. The court overruled the objection.

On the second day of trial, the State asked for an early break. The

prosecutor told the court that juror 4 had possibly fallen asleep during testimony.

Defense counsel had no response, so the court resumed trial after the break.

Short called no witnesses and denied entering the Noseck home or selling any

rings to Cash America Pawn.

At the close of trial, the court instructed the jury on residential burglary:

> To convict the defendant of the crime of residential burglary,
> each of the following elements of the crime must be proved beyond
> a reasonable doubt:
> (1) That on or about December 7, 2015, the defendant
> entered or remained unlawfully in a dwelling;
> (2) That the entering or remaining was with intent to commit
> a crime of theft against a person or property therein; and
> (3) That this act occurred in the State of Washington.

The court defined "dwelling" as "any building or structure that is used or ordinarily

used by a person for lodging."

---

[2] Before trial, Short moved to exclude the transaction receipt, arguing that it is "not relevant." The court denied the motion. That ruling is not at issue here.

During deliberations, the jury asked the court, "Is the deck considered part of the dwelling?" Short urged the court to answer "no." The State suggested that the court refer the jury to their instructions. The court determined:

> The standard pattern instruction defines dwelling as any building or structure that is used or ordinarily used by a person for lodging. There has been case law that found a garage, for example, or an area underneath that is ordinarily used for lodging as sufficient, so that would be a comment on the evidence. It's up to the jury to decide whether or not they believe it was Mr. Short on the deck, leaving a palm print, whether or not the deck was ordinarily used by a person as lodging or not.

The court told the jury to "[p]lease refer to your jury instructions."

The jury found Short guilty of residential burglary. The court determined he committed the crime while on community custody and sentenced Short to 72 months of confinement.

Short appeals.

ANALYSIS

Short argues the trial court erred by refusing to instruct the jury that a deck is not a dwelling, failing to investigate whether a juror was sleeping during testimony, and admitting the pawnshop transaction receipt under the business record exception to hearsay. Short also argues ineffective assistance of counsel and cumulative error entitle him to a new trial. We address each argument in turn.

1. <u>Jury Question</u>

Short argues the trial court erred by refusing to instruct the jury that a deck is not a dwelling based on "a misapprehension of the law." We disagree.

4

We review a trial court's response to a jury question for an abuse of discretion. See State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998) (we review a trial court's refusal to give a jury instruction based on a factual dispute for abuse of discretion; de novo if based on a ruling of the law). A trial court abuses its discretion when its decision is manifestly unreasonable or rests on untenable grounds or reasons. State v. Chichester, 141 Wn. App. 446, 453, 170 P.3d 583 (2007). A ruling based on an erroneous view of the law is an abuse of discretion. State v. Dixon, 159 Wn.2d 65, 76, 147 P.3d 991 (2006).

Article I, sections 3 and 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution guarantee defendants the right to a fair trial. A fair trial requires that jury instructions accurately inform the jury of the relevant law. State v. Henderson, 192 Wn.2d 508, 512, 430 P.3d 637 (2018). After a jury begins deliberating, a trial court has discretion whether to provide additional instructions to the jury. State v. Ng, 110 Wn.2d 32, 42, 750 P.2d 632 (1988). Generally, a court has no duty to further instruct the jury after it begins deliberating. See State v. Langdon, 42 Wn. App. 715, 718, 713 P.2d 120 (1986). Nor does the court need to further instruct the jury when the given instructions accurately state the law. State v. Campbell, 163 Wn. App. 394, 402, 260 P.3d 235 (2011), rev'd on other grounds, 172 Wn. App. 1009 (2012). But when "a jury's question to the court indicates an erroneous understanding of the applicable law, it is incumbent upon the trial court to issue a corrective instruction." Id.

Here, the trial court accurately instructed the jury that "[d]welling means any building or structure that is used or ordinarily used by a person for lodging." See RCW 9A.04.110(7) (" 'Dwelling' means any building or structure, though movable or temporary, or a portion thereof, which is used or ordinarily used by a person for lodging."). And the jury's question did not reflect a misunderstanding of that instruction. Instead, asking if "the deck [is] considered part of the dwelling" called for the court to assess whether the evidence adduced at trial satisfied that definition of "dwelling." The question was one of fact for the jury to decide. See State v. McDonald, 123 Wn. App. 85, 90-91, 96 P.3d 468 (2004)[3] ("whether a building is a [dwelling] turns on all relevant factors and is generally a matter for the jury to decide").

Short argues that the court's refusal to answer the jury's question amounts to an erroneous understanding of the law. Citing State v. Garcia, 179 Wn.2d 828, 318 P.3d 266 (2014), he claims that "[a]s a matter of law, the unenclosed deck in a yard is not part of the dwelling for purposes of residential burglary." In Garcia, our Supreme Court determined that a defendant standing in a commercial parking lot was not "inside" a building as contemplated by the burglary statute. Id. at 833, 849. But Short was not standing in a parking lot outside a commercial business. The record shows that Short was standing on a deck attached to the back door of the house.

Further, we have held that the definition of "dwelling" includes any building, structure, "or a portion thereof" used by a person for lodging. See State

---

[3] Footnote omitted.

6

v. Neal, 161 Wn. App. 111, 114, 249 P.3d 211 (2011); RCW 9A.04.110(7). Applying that definition, we have concluded that a dwelling can include an attached garage, State v. Murbach, 68 Wn. App. 509, 513, 843 P.2d 551 (1993), a tool room in an apartment building, Neal, 161 Wn. App. at 112-14, and an "enclosed area beneath [a] living space," State v. Moran, 181 Wn. App. 316, 322, 324 P.3d 808 (2014). Indeed, Division Three of our court concluded that a deck, given its description and surroundings, amounted to "an extension of the dwelling and therefore a part of the abode." State v. Haley, 35 Wn. App. 96, 98, 665 P.2d 1375 (1983).[4]

Short fails to show that a deck is not part of a dwelling as a matter of law, and the trial court did not abuse its discretion by refusing to so instruct the jury.

2. Sleeping Juror

Short argues that the trial court "violated its obligation to ensure a fair trial by not conducting any inquiry into a sleeping juror." We disagree.

We review a trial court's investigation of juror misconduct for abuse of discretion. State v. Gaines, 194 Wn. App. 892, 896, 380 P.3d 540 (2016). Under RCW 2.36.110, "[i]t shall be the duty of a judge to excuse . . . any juror, who in the opinion of the judge, has manifested unfitness . . . by reason of . . . inattention." The statute "place[s] a continuous obligation on the trial court to excuse any juror who is unfit and unable to perform the duties of a juror." State v. Jorden, 103 Wn. App. 221, 227, 11 P.3d 866 (2000). But there is no

---

[4] In an unpublished opinion, we later questioned the holding in Haley. See State v. Hribar, noted at 119 Wn. App. 1001, 2003 WL 22476191, at *3. But we determined that the insufficient description of the "patio" in that case did not warrant disagreement with the holding in Haley. Id.

7

mandatory format for establishing a record of alleged juror misconduct. Id. at 229. A trial judge has broad discretion to investigate jury problems and accusations of juror misconduct in the manner most appropriate for a particular case. State v. Elmore, 155 Wn.2d 758, 773, 123 P.3d 72 (2005). "If at any time before submission of the case to the jury" the court finds a juror unable to perform their duties, "the court shall order the juror discharged." CrR 6.5.

A juror who sleeps during trial is not fit to serve. See Jorden, 103 Wn. App. at 224-26, 230. A sleeping juror may prejudice a defendant's due process rights and the right to an impartial jury. See State v. Hughes, 106 Wn.2d 176, 204, 721 P.2d 902 (1986). But to establish prejudice, the defendant must at least show "how long the jurors slept or what specific testimony they missed by sleeping." See In re Pers. Restraint of Caldellis, 187 Wn.2d 127, 146, 385 P.3d 145 (2016).

Here, the State called the officer who found the palm print on the sliding glass door to explain the print collection process and a WSPCL forensic scientist to explain the analysis and identification process. During the forensic scientist's testimony, the State asked for the midmorning break and addressed the court outside the jury's presence. The prosecutor told the court that "[i]t was brought to my attention that at least one juror had fallen asleep" and identified that person as juror 4. The court said it "saw that Mr. Short looks tired" but was "not aware that a juror looked like they were sleeping." The court then asked defense counsel if he would "like to be heard." Defense counsel responded, "No, your Honor," and the court resumed the trial after the midmorning recess.

8

Short argues:

> By failing to engage in any inquiry whatsoever despite the prosecution alerting the court that at least one juror was asleep during the prosecution's case, the court violated its continuing obligation to ensure the jurors heard the evidence, remained impartial, and were qualified to render a verdict.

But the information before the court was tenuous. The court knew that someone perceived juror 4 to be sleeping, but neither the prosecutor, defense counsel, nor the court saw the juror sleeping. Indeed, defense counsel had no additional information to offer. On these facts, it was not untenable for the court to conclude that the report did not warrant further investigation.

Nonetheless, even if the trial court erred, Short fails to establish prejudice. The record is silent on how long the juror may have been sleeping or what specific testimony they may have missed. We reject Short's argument that he is entitled to a new trial based on the court's failure to further inquire about a sleeping juror.[5]

### 3. Pawnshop Receipt

Short argues the trial court improperly admitted a pawnshop transaction receipt under the business record exception to hearsay. Short says the court erred by ruling that pawnshop employee Bellman was a qualified custodian of the transaction receipt. Further, he claims his attorney was ineffective for failing to argue that creating the transaction receipt required the use of "skill, judgment, or discretion" and that the pawnshop created the receipt for the sole purpose of litigation.

---

[5] Because we conclude that the trial court did not abuse its discretion, we do not address the State's argument that Short invited the error.

9

We review a trial court's evidentiary rulings for an abuse of discretion and will reverse only if the court's decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995); State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). "Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is not admissible unless a court rule or statute allows it. ER 802.

RCW 5.45.020 provides one such exception to the hearsay rule for business records. Evidence is admissible under the business records exception when (1) the evidence is in "record" form; (2) the record is of an "act, condition or event"; (3) the record was made in the regular course of business; (4) it was made "at or near the time of the act, condition or event"; and (5) the court is satisfied that "the sources of information, method and time of preparation were such as to justify its admission." RCW 5.45.020; State v. Kreck, 86 Wn.2d 112, 118-19, 542 P.2d 782 (1975).

### A. Records Custodian

Short argues the trial court erred by determining that Bellman was qualified to testify as a custodian of the pawnshop transaction receipt. We disagree.

Hearsay is admissible as a business record so long as a "custodian or other qualified witness testifies to its identity and the mode of its preparation." RCW 5.45.020; State v. Quincy, 122 Wn. App. 395, 399, 95 P.3d 353 (2004).

10

We broadly interpret the statutory terms "custodian" and "other qualified witness." Quincy, 122 Wn. App. at 399.

RCW 5.45.020 does not require examination of the person who actually made the business record. Quincy, 122 Wn. App. at 399. " 'Testimony by one who has custody of the record as a regular part of his work or has supervision of its creation ("other qualified witness" under the statute) will suffice.' " Id. (quoting State v. Ben-Neth, 34 Wn. App. 600, 603, 663 P.2d 156 (1983) (quoting RCW 5.45.020)). When the trial court " 'is satisfied that sufficient testimony has been adduced regarding the manner in which certain records have been kept and that their identity has been properly established in compliance with' " chapter 5.45 RCW, the record is admissible. State v. Iverson, 126 Wn. App. 329, 338, 108 P.3d 799 (2005) (quoting Cantrill v. Am. Mail Line, Ltd., 42 Wn.2d 590, 607-08, 257 P.2d 179 (1953)).

At trial, Short objected to admitting the pawnshop receipt, arguing that he had "new information" to show "Bellman is not [a] proper custodian of records." So, the court allowed Short to inquire into Bellman's qualifications:

> Q. Mr. Bellman, when in 2017 did you start working at Cash America?
> A. I'm not quite familiar with that, but I know — I believe it was around May or June.
> Q. And when you started — do you remember discussing this case with Kerry Bernhard? That's the detective that you eventually gave this document to.
> A. (No response.)
> Q. If you don't remember her name, a police officer?
> A. Yes.
> Q. Do you remember telling her that the computer record system had been completely changed in June of 2017 and that you were unable to provide a record of the transaction at that time? Do you remember telling her that at first?

Q. And then at some point a couple days later, you went back and looked through some boxes, and you produced this slip; is that correct?

A. Yes.

Q. So is it fair to say that at the time that you were working at the Cash America, the computer system and recordkeeping had completely changed, it was not the same as in 2015 when this document was made; is that correct?

A. Yes.

Short then argued that Bellman "is not familiar with the records as they were kept in 2015 when [the transaction receipt] was made; therefore, he is not the witness that can lay the foundation to admit it." In response, the State asked Bellman:

Q. So, you joined Cash America in 2017, right?

A. Yes.

Q. Were you present for the change in the system?

A. Yes.

Q. So were you there when the old system was there?

A. Yes.

Q. You were aware of how that system operated?

A. Yes.

Q. You were there when the new system was implemented?

A. Yes.

After a brief colloquy with the court, Short tried to clarify Bellman's prior testimony:

Q. When you told Detective Bernhard that the system had changed in 2017, what did you mean specifically by that?

A. What I was telling her I couldn't look it up when I believe she called me I couldn't look it up on the computer because the system didn't go back that far, I would have to find the document to refer back to her inquiry because I couldn't find her inquiry on the computer.

Q. And when did you leave Cash America?

A. I believe — I would be just guessing — I believe it was late 2018 or early 2019.

Q. So your testimony to the Court today is that the computer system changed in June of 2017, but the hardcopy — the

12

> way the physical records were kept, you're saying that that
> did not change?
>
> A.    Correct.

Short then withdrew his objection, but after a discussion with the court, withdrew

his withdrawal.  Ultimately, the court overruled Short's objection.

Bellman's testimony showed that he was familiar with both the record

keeping system in place during 2015 when Short pawned the rings and the

current record keeping system.  Bellman explained that both systems kept

physical records.  He clarified that he had to manually search for hard copy

records made before 2017, while he could use a computer to search for records

made after 2017.  And he identified the December 15, 2015 transaction receipt

as a document kept under the old system.  The trial court did not abuse its

discretion by allowing Bellman to testify as a custodian of the receipt.

### B.  Ineffective Assistance of Counsel

Short argues his attorney was ineffective for failing to argue that the

transaction receipt was inadmissible as a business record because its creation

required the use of skill, judgment, or discretion and that it was prepared for the

purpose of litigation.

The Sixth Amendment and article I, section 22 of the Washington

Constitution guarantee effective assistance of counsel.  State v. Grier, 171

Wn.2d 17, 32, 246 P.3d 1260 (2011) (citing Strickland v. Washington, 466 U.S.

668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).  To succeed on a claim

of ineffective assistance of counsel, the defendant must show both deficient

performance and prejudice.  Strickland, 466 U.S. at 687.  We need not "address

13

both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

We view a claim of ineffective assistance of counsel with a strong presumption of effective representation. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Representation is deficient when it falls below an objective standard of reasonableness. Id. at 334-35. Prejudice occurs when there is a reasonable probability that but for counsel's error, the result of the trial would have been different. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). When a claim of ineffective assistance rests on trial counsel's failure to challenge the admission of evidence, the defendant must show that the trial court would likely have sustained an objection. State v. Saunders, 91 Wn. App. 575, 578, 958 P.2d 364 (1998).

### i. Use of Skill, Judgment, or Discretion

Short argues that the business records exception to hearsay does not apply to the pawnshop transaction receipt because it contains subjective descriptions of the pawned rings, which required the use of Bellman's "skill, judgment, or discretion." We disagree.

The business records exception generally applies to objective records of regularly recorded activities. In re Det. of Coe, 175 Wn.2d 482, 505, 286 P.3d 29 (2012). The exception does not apply to those records created through the declarant's skill, judgment, or discretion. Id.

Short says the transaction receipt here is like the document rejected in Coe. In that case, over the defendant's objections, the trial court admitted into

14

evidence data from an investigative database that law enforcement maintained to gather information about sexual assaults. Coe, 175 Wn.2d at 501-02. The State argued the evidence was admissible under the business records exception to hearsay. Id. at 504-05. Our Supreme Court disagreed, explaining that the business records exception generally applies to objective records of a regularly recorded activity and not those " 'reflecting the exercise of skill, judgment, and discretion.' " Id. at 505 (quoting 5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 803.37 (5th ed. 2007)). It determined that the information from the database relied on "police reports [that] are a subjective summary of the officer's investigation" and "victims' [subjective] statements . . . based on judgment or discretion." Id.

The transaction receipt here is not like the evidence in Coe. Cash America's receipt requires the "employee/lender" to include information about the "borrower/seller" engaging in the transaction, including the customer's name, date of birth, height, weight, eye color, race, and gender. It also clarifies whether the "transaction type" is a purchase or a loan. And it contains a section asking for the "description of property" being pawned. The employee who created Short's transaction receipt listed "Tynan Short" as the "seller" of the items and described the property as three "[ladies] fashion rings." The transaction receipt identifies the color, size, and stones of each ring. None of this information requires the use of skill, judgment, or discretion.

Short argues that creating the receipt required the use of skill because Cash America tests the rings for the authenticity of their metal and gems. But

nothing in the document requires that level of detail in the description, and the information about the authenticity of the metal and gems in the rings was not at issue here. Instead, the State admitted the document to show the general description of the rings and the name of the person selling them. Short fails to show that the court would have likely sustained an objection to the transaction receipt on this basis.

### ii. Created for Sole Purpose of Litigation

Short also argues that the receipt is not a business record because pawnshop records are "prepared to establish past events potentially relevant to a later criminal investigation, rendering them testimonial under the Confrontation Clause."[6] We disagree.

Business records are presumptively admissible if made in the regular course of business with no apparent motive to falsify. In re Welfare of M.R., 200 Wn.2d 363, 378, 518 P.3d 214 (2022). We assume that a business creates such records for clerical purposes and not in anticipation of litigation. Id. at 378-79. But courts may not admit facially valid business records " 'if the regularly conducted business activity is the production of evidence for use at trial.' " State v. Jasper, 174 Wn.2d 96, 112, 271 P.3d 876 (2012) (quoting Melendez-Diaz v. Massachusetts, 557 U.S. 305, 321, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009)).

Short argues that Cash America creates transaction receipts for the sole purpose of litigation much like those in Melendez-Diaz. In that case, the United States Supreme Court considered whether "certificates of analysis" fell under the

---

[6] U.S. CONST. amend. IV; WASH. CONST. art. I, § 22.

business records exception to hearsay. Melendez-Diaz, 557 U.S. at 308-09, 321. The prosecution offered the certificates as evidence that the results of a forensic analysis established that a seized substance was cocaine. Id. at 308. It argued the certificates were " 'akin to the types of official and business records admissible at common law.' " Id. at 321. The Supreme Court disagreed, reasoning that while the certificates were kept in the regular course of business, they were " 'calculated for use essentially in the court, not in the business.' " Id. (quoting Palmer v. Hoffman, 318 U.S. 109, 114, 63 S. Ct. 477, 87 L. Ed. 645 (1943)). The Court held that the business records exception did not apply when "regularly conducted business activity is the production of evidence for use at trial." Id.

The transaction receipt here is unlike the certificates in Melendez-Diaz. Cash America creates the transaction receipts to identify whether the "transaction type" is a "purchase," as it was here, or a loan. The receipt identifies the person selling items and describes the items the customer sold with particularity. Cash America retains a copy of the receipt and provides a copy to the customer. The receipt is a clerical document used by Cash America to record the sale of items.[7]

Still, Short claims that Cash America created the receipt for the purpose of litigation because RCW 19.60.020 requires pawnbrokers to record transactions and make them available to law enforcement for inspection.

---

[7] The receipt also serves as a contract between Cash America and the customer if the transaction type is a loan.

Under RCW 19.60.020, pawnbrokers must maintain a record of information for each transaction. Among other details, pawnbrokers must record the date of the transaction; the customer's name, date of birth, gender, height, weight, race, address, and telephone number; and a "complete description of the property pledged, bought, or consigned." RCW 19.60.020(1). The business record "shall at all times during the ordinary hours of business . . . be open to the inspection of any commissioned law enforcement officer." RCW 19.60.020(2).

That pawnbrokers must keep certain records and make them available to law enforcement for inspection does not mean that they create the records solely for the purpose of litigation.[8] Indeed, the receipts have an obvious record-keeping clerical function.[9] Short fails to show that the trial court would have sustained an objection to the admission of the transaction receipt as a record prepared solely for the purpose of litigation.

### 4. Cumulative Error

Short argues that cumulative error deprived him of a fair trial. The cumulative error doctrine entitles a defendant to a new trial "when cumulative errors produce a trial that is fundamentally unfair." State v. Emery, 174 Wn.2d

---

[8] We note we have held that even some police records may qualify as business records under RCW 5.45.020. See, e.g., Iverson, 126 Wn. App. at 332-33, 337-39 (victim's jail booking record constituted business record to prove her identity as victim named in protection order); State v. Bradley, 17 Wn. App. 916, 918, 567 P.2d 650 (1977) (police computer printout used as evidence of all phone calls requesting police assistance on specific date admissible as business record); State v. Bellerouche, 129 Wn. App. 912, 917, 120 P.3d 971 (2005) (trespass notice issued by police constituted admissible business record).

[9] At least one out-of-state case reached a similar result. See Gonzalez v. State, 965 So.2d 273, 276 (Fla. Dist. Ct. App. 2007) (a pawnshop transaction form "is not prepared primarily to be used in a criminal prosecution with the purpose of bearing witness against the customer" when "it has other record-keeping purposes").

18

741, 766, 278 P.3d 653 (2012).  Reversal is not required where the errors are few and have little to no effect on the outcome of the trial.  State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).  Because no trial error occurred here, the cumulative error doctrine does not apply.

We conclude the trial court did not err by refusing to instruct the jury that a deck is not a "dwelling," deciding not to inquire further of a potentially sleeping juror, and admitting the pawnshop transaction receipt under the business record exception to the hearsay rule.  We also conclude Short cannot show ineffective assistance of counsel or cumulative error.  We affirm.

WE CONCUR: